*FILED*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

*98 OCT 26 PM 12: 31*

*U.S. DISTRICT COURT*
*N.D. OF ALABAMA*

DAVID MARTIN WOODS              )
                               )
        Plaintiff,             )
                               )
v.                             )      CV-97-AR-1936-E
                               )
DESIGNER CHECKS, INC. a        )
division of National           )
Computer Print, Inc.; and      )
NATIONAL COMPUTER PRINT,       )
INC.,                          )
                               )
        Defendants.            )

*Cho*

**ENTERED**

*OCT 2 6 1998*

### MEMORANDUM OPINION

The court has before it a motion for summary judgment by defendants, Designer Checks, Inc. ("DCI") and National Computer Print, Inc. ("NCP"). Plaintiff, David Martins Woods ("Woods"), alleges that DCI failed to promote him because of his race (black), that he was retaliated against when he complained about the said discrimination, and that a hostile work environment forced him to resign. These claims are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.

### Factual Background

Woods was hired as a customer service representative ("CSR") for DCI on February 14, 1996. Shortly thereafter, on March 6,

21

1996, Melody MacNamara was hired away from NCP's Human Resources Department to become DCI's new manager of the Customer Service Department.  Around this same time, Mary Ann Hovender was promoted from the position of CSR to become a CSR supervisor, and in such capacity she supervised Woods while reporting directly to MacNamara.

Woods was apparently an exceptionally good CSR.  The record contains letters from DCI customers praising Woods.  Woods also received consistently good evaluations from Hovender, as reflected by standard DCI evaluation forms also contained in the record.  Hovender even directed Woods to identify himself as "backup supervisor" when dealing with customers, and she assigned him significant supervisory duties.  When MacNamara asked Hovender to recommend someone to fill a new position as supervisor, she recommended Woods for the job.

MacNamara was opposed to Woods for the supervisor's job. According to Hovender, MacNamara said "There is no way I am ever going to promote David Woods for a supervisor position because not only is he young and headstrong and he's black, he's gay." *Pl.'s Exh. 19, Hovender Depo. at 56*.  In reference to Woods, MacNamara continued, "I can't put a goddam faggot on the phone talking in a feminine voice to my customers."  *Id*.  After prodding Hovender for a second nominee, MacNamara promoted Marie Jane Pritchett to CSR supervisor.  Unlike Woods, at the time she

was promoted, Pritchett was not, and had not been, engaged in any supervisory duties. After Pritchett was promoted, MacNamara required Woods to cease performing any supervisory duties and to cease identifying himself to customers as a "backup supervisor."

The record suggests that MacNamara later had a change of heart about Woods. Only weeks after Woods was passed over for the supervisor's job, MacNamara instructed him to identify himself to customers as "senior" CSR. MacNamara then reassigned Woods to the "pull library" with the title "lead pull library CSR", and his new responsibilities included delegating work to other employees, submitting reports, and sending out memoranda. MacNamara informed the entire Customer Service Department that Woods was "in charge" in the pull library, and she praised his "excellent job" via a memo she distributed in late June, 1996.

Defendants assert that shortly after Woods' move to the pull library, he began having considerable difficulty interacting with some of his co-workers. Woods admits that some minor arguments and discord arose between him and at least two others. The conflicts were evidently severe enough that around July 10, 1996, MacNamara met with Woods to discuss some of these problems. Roughly one week later, on July 17, 1998, Woods and MacNamara met again at Woods request, and Woods gave her a written proposal outlining his suggestions for improving the pull library. During this meeting, Woods suggested for the first time that he felt he

had been discriminated against in MacNamara's earlier decision to promote Pritchett.

On July 22, 1996, only 5 days after Woods first alleged discrimination, a conference call was held which included MacNamara, DCI Vice President Keenum, Human Resources manager Cathy Snow, and Vice President for Human Resources Mike Condry. In that telephonic meeting a decision was made to remove Woods from the pull library and once again assign him to be a CSR. Two days later MacNamara and Keenum informed Woods that he was being subjected to disciplinary action regarding his conflicts with co-workers, and they reassigned him as a CSR.

Woods called Snow in the Human Resources Department to complain. He protested that the discipline and reassignment actually constituted retaliation for his allegation of discrimination. He threatened to sue. Snow's response is disputed. Woods claims that she replied "you might as well not work for the company anymore" if he pursued legal action. Snow asserts that Woods misunderstood her, and that she had merely indicated that their conversation should cease if he were serious about legal action. Whatever was actually said, Woods apparently perceived her reply as a threat to his job. On July 26, 1996, Woods resigned from DCI.

### Discussion

### NCP as a Proper Defendant

DCI initially began as a part of NCP, but in 1992 DCI was separately incorporated.  Neither company owns stock in the other, although the companies share some management personnel. NCP provides certain services for DCI on a paid basis, such as administering payroll, accounting, and the human resources department.  Defendants assert that NCP is not a proper defendant in this case because it was never Woods' employer.  Even if NCP committed discriminatory acts against Woods, defendants argue that NCP could not be found liable under Title VII or 28 U.S.C. 1981, because, so they state, these statutory provisions only apply to Woods' employer.

Woods relies upon *Zaklama v. Mount Sinai Medical Center*, 842 F.2d 291 (11th Cir. 1988)("Zaklama"), to argue persuasively that any employer covered under Title VII is liable for its discriminatory acts which interfere with the terms and conditions of employment of *any* individual.  In *Zaklama* the Eleventh Circuit held:

> To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.

- Page 5 -

*Id.*, at 294, quoting *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338,1341 (D.C.Cir.1973)("Sibley").

NCP occupied a unique position in which it was able to control or substantially impact the terms and conditions of Woods' employment with DCI through the Human Resources Department which it administered. To permit NCP to discriminatorily prevent Woods' promotion, retaliate against his protected expression, or effectively force his resignation, even though NCP could not lawfully do such things to its own employees, would be to "condone continued use of the very criteria for employment that Congress has prohibited." *Sibley, at 1341.* As Woods argues, NCP affected the terms and conditions of his employment through their Human Resources Department at DCI, and thus, in keeping with *Zaklama* and *Sibley*, this court finds that NCP is a proper defendant in this action.

Failure to Promote Claim

The court has taken the time to write this opinion in order to clarify the respective burdens which the parties to this case carry. Defendants have expended considerable effort trying to persuade this court that Woods' evidence must be considered merely indirect, rather than direct, evidence of discriminatory intent. Were this the case, as both parties recognize,

defendants' burden upon rebuttal of the prima facie case would be considerably lighter.

In dispute is the characterization of the alleged statements by MacNamara such as "There is no way I am ever going to promote David Woods for a supervisor position because not only is he young and headstrong and *he's black*, he's gay." *Pl.'s Exh. 19, Hovender Depo. at 56* (emphasis added). Defendants argue that this statement should be deemed only indirect evidence, because, they insist, it is susceptible to multiple interpretations and does not compel the conclusion that MacNamara refused to promote Woods due to racial bias. Defendants argue that the above-referenced statement by MacNamara, taken with other considerations, should lead a fact finder to conclude that MacNamara was motivated not to hire Woods on account of his homosexuality, not on account of his race. Of course, MacNamara's statement is open to different interpretations regarding the relative weight she gave to her multiple forms of prejudice. However, to the extent that her alleged comments relate to Woods' race, the court finds that testimonial evidence is rarely more direct than this. On the basis of such direct evidence, a reasonable jury certainly could conclude that Woods has made out his prima facie case.

Where plaintiff's prima facie case is built upon direct evidence, as here, the only appropriate way in which defendants

can rebut the presumption of discrimination is by presenting a
defense in reliance upon *Mt. Healthy City School District v.
Doyle*, 429 U.S. 274; 97 S.Ct. 568 (1977), according to which
defendants could not be found liable if they demonstrate, by a
preponderance of the evidence, that they would have reached the
same employment decision in the absence of discriminatory
factors.  In *Lee, et al. v. Russell County Board of Education, et
al.*, 684 F.2d 769, the Eleventh Circuit explained the impact of
direct evidence in support of a prima facie case:

> Where a case for discrimination is proved by direct evidence
> it is incorrect to rely on a *McDonnell Douglas* form of rebuttal...
> Where the evidence for a prima facie case consists, as it does
> here, of direct testimony that defendants acted with a
> discriminatory motivation, if the trier of fact believes the prima
> facie evidence the ultimate issue of discrimination is proved; no
> inference is required.  Defendant cannot rebut this type of
> showing of discrimination simply by articulating or producing
> evidence of legitimate, nondiscriminatory reasons.  Once an
> unconstitutional motive is proved to have been a significant or
> substantial factor in an employment decision, defendant can rebut
> only by proving by a preponderance of the evidence that the same
> decision would have been reached even absent the presence of that
> factor."

*Id. at 774.*

Defendants argue that DCI would not have promoted Woods on
the basis of his homosexuality alone, and they contend that a
trier of fact would be compelled to agree.[1]  They point out that

---

[1]In addition, defendants also offer two legitimate, non-discriminatory
grounds why Woods was not promoted: They claim that Pritchett was more

"Hovenden, the only person who claims to have heard the alleged statements [of MacNamara], concluded that MacNamara's comments suggested only a concern or a problem with Plaintiff's sexual preference, not his race." *Def.'s Brief in Support of Motion for Summary Judgment, at 6.* In essence, it is as though defendants were saying "We did not illegally discriminate on the basis of A, but we legally discriminated on the basis of B." It may be true in light of all circumstances, including the fact that MacNamara later hired a different black man as a CSR supervisor, that the "most reasonable" interpretation of MacNamara's hiring decisions was that she disapproved of Woods' sexual orientation. Such bias is not illegal in the Eleventh Circuit and is not relied upon by Woods in this case. However, this court cannot conclusively determine the "most reasonable" interpretation of the facts for purposes of summary judgment. Because MacNamara's real motivations for refusing to promote Woods are clearly in dispute,

---

qualified for the job of CSR supervisor and that Woods repeatedly argued with co-workers. Even if such a rebuttal were sufficient to overcome the inference of discrimination presented by Woods' prima facie case, the court finds that a reasonable jury could conclude that Woods was able to demonstrate that these proffered reasons are merely pretext. Woods received repeated praise for his work, first in the Customer Service Department and later in the pull library. He evidenced considerable organizational skills and apparently functioned effectively in his supervisory capacities. Whether or not he was actually more qualified than Pritchett for the job of CSR supervisor is a fact which this court may not determine, but a reasonable jury might conclude that MacNamara did not truly consider either Woods' qualifications or his attitude to be obstacles to promotion. Instead, such a jury might conclude that defendants' proffered reasons for failing to promote him are actually pretext for discriminatory motivations, including illegal ones.

summary judgment is inappropriate on Woods' claim regarding
defendants' allegedly discriminatory failure to promote him.

## Retaliation Claim

In regard to Woods' contention that defendants unlawfully
retaliated against him in response to his initial charges of
discrimination, defendants do everything but state Woods'
argument for him for purposes of the summary judgment motion.  As
defendants themselves explain, to establish a prima facie case of
retaliation, Woods needs to present evidence 1) that he was
engaged in protected activity, 2) that he suffered adverse
employment action, and 3) that the two are causally connected.
*See, e.g., Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d
913, 919 (11th Cir. 1993); *Meeks v. Computer Associates
International*, 15 F.3d 1013, 1021 (11th Cir. 1994).  In their
*Brief in Support of Motion for Summary Judgment*, defendants admit
that Woods was engaged in, or proposed to engage in, statutorily
protected expression when he threatened to sue DCI and/or NCP for
discriminatorily failing to promote him.  *Def.'s Brief, at 35.*
Furthermore, defendants concede that "Plaintiff's disciplinary
action and reassignment can possible be construed as sufficient
adverse employment action."  *Id., at 36.*  They also admit that
the close proximity in time between such protected expression and
the disciplinary action against him, combined with his subsequent

reassignment, may effectively establish an inference of a causal link between them. In short, defendants effectively concede Woods' *prima facie* case.

Because no direct evidence is presented to establish the retaliation claim, defendants correctly argue that they may rebut any presumption of retaliation by the mere production of legitimate, nonretaliatory reasons for the adverse employment actions taken against Woods. In support of their actions, defendants cite Woods' alleged repeated confrontations with co-workers and his alleged inability to communicate well with his superiors, including MacNamara. It is true that defendants present considerable evidence to support these contentions, including detailed accounts of Woods' conflicts with Amy Bunt, Mary Grant, Robin Lohr, and Curtis Lewis. Additionally, defendants present evidence to undermine Woods' suggestion that their articulated legitimate reasons are merely pretext for retaliatory motives. For instance, DCI had, for purportedly similar reasons, demoted and reassigned another employee, Angela McCormick, a white employee not threatening a lawsuit, only a few weeks prior to Woods' discipline and reassignment.

In his *Brief in Opposition to Motion for Summary Judgment*, Woods correctly states that "evidence of retaliation and the defendants' articulated reasons must be viewed in conjunction with the circumstantial evidence of animus by one of the demotion

decision-makers." *Pl.'s Brief*, at *34; citing Ross v. Rhodes Furniture*, 1998 WL 403365, *4 (11th Cir. July 20, 1998). If a jury were to believe Woods' evidence of racial discrimination in DCI's failure to promote him, that jury could reasonably conclude that such animus remained when Woods finally threatened to make an issue of the alleged discrimination. Furthermore, DCI's contention that Woods became increasingly difficult to work with serves to highlight the fact that DCI found no reason sufficient to discipline Woods prior to his discrimination complaint. The court finds that Woods has presented sufficient evidence to allow a reasonable jury to find DCI's articulated non-retaliatory reasons to be pretext for actual retaliatory motives, and therefore summary judgment on this claim would be inappropriate.

<u>Hostile Work Environment and</u>

<u>Constructive Discharge Claim</u>

Woods relies upon *Young v. Southwestern Savings and Loan Association*, 509 F.2d 140 (5th Cir. 1975)("Young"), to explain the principle of constructive discharge:

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Id.*, at *144.*

The court finds that even if a jury were to believe Woods'
account of his employment with DCI, it could not reasonably
conclude that his work environment became sufficiently
"intolerable" to meet the standard articulated in *Young*.  The
burden of proving a constructive discharge is higher than simply
to make out a *prima facie* case of discrimination.  As was pointed
out in *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th
Cir. 1991), the mere facts that a plaintiff's supervisors were
hostile, critical and withdrew their accustomed support would not
compel a reasonable person to resign.  The question is not only
what a reasonable jury could do but what could be expected from a
reasonable employee.  A reasonable employee does not so quickly
succumb to the kind of mistreatment this plaintiff claims to have
received.  Woods has presented evidence that he was not promoted
for racially discriminatory motives, that he was disciplined and
reassigned in retaliation for complaining about the alleged
discrimination, and that he felt that his job was threatened.
Such evidence, if believed, would not support a jury finding that
Woods' resignation was forced.  Therefore, summary judgment is
appropriate on this final claim.

## Conclusion

For the reasons discussed above, the court finds that summary judgment would be inappropriate on all of Woods' claims except his discharge claim.  A separate and appropriate order will be entered.

DONE this 26ᵗʰ day of October, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE